UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAVIER MARTINEZ,

               Petitioner,

    v.

LOWELL CLARK, et al.,

              Respondents.

Case No. C20-780-TSZ-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner, who is currently in the custody of U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, brings this 28 U.S.C. § 2241 habeas action through counsel to obtain release from detention. (Pet. (Dkt. # 1).) The Government has filed an opposition (Resp. (dkt. # 5)), and Petitioner has filed a reply (Reply (dkt. # 6)). Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends DENYING Petitioner's habeas petition and DISMISSING this action with prejudice.

## II. BACKGROUND

### A. Proceedings Leading to Petitioner's Detention

Petitioner, a native of Costa Rica and a citizen of Nicaragua, lawfully entered the United States in 1987 when he was seven years old and became a lawful permanent resident in 1990. (Resp., Ex. A (Dkt. # 5-1 at 1-3), Ex. B (Dkt. # 5-1 at 4-9); Pet. at ¶ 5.) Growing up, Petitioner suffered serious physical and emotional abuse at the hands of his mother, who was an alcoholic. (Pet. at ¶ 11.) When he was about 13 years old, his mother no longer wanted to care for him and allowed him to live with some older men who were dealing drugs. (*Id.*) Petitioner was used as a drug runner, and by the time he was 15 years old, he was addicted to alcohol and cocaine. (*Id.*)

In October 1999, when he was 19 years old, Petitioner was arrested and charged with Conspiracy to Distribute Cocaine in the Western District of Washington. (Pet. at ¶ 12; Resp., Ex. C (Dkt. # 5-1 at 10-16).) In August 2000, Petitioner was convicted and sentenced to 20 months in prison and five years of supervised release. (Resp., Ex. C.) After he was released in April 2001, the U.S. Department of Homeland Security ("DHS") commenced removal proceedings against him. (*Id.*, Ex. A; Pet. at ¶ 12.) In September 2002, an immigration judge ("IJ") granted his application for withholding of removal. (Resp., Ex. D (Dkt. # 5-1 at 17-18).)

From 2002 to 2009, Petitioner lived in Seattle, working to support his daughter and helping to support his partner and her son. (Pet. at ¶ 13.) During this time, Petitioner was able to stay away from alcohol and drugs. (*Id.*) Around 2009, however, Petitioner relapsed and began using drugs again. (*Id.* at ¶ 14.)

In February 2013, Petitioner was arrested and again charged with drug-related crimes in the Western District of Washington. (Pet. at ¶ 15; Resp., Ex. E (Dkt. # 5-1 at 19-25); *United States v. Martinez*, No. 13-50-RSL (W.D. Wash.).) The Honorable Mary Alice Theiler released

1  Petitioner pending trial. (Reply, Ex. 1 (Dkt. # 6-1) at 36-37.) Among the other conditions of his
2  release, Petitioner was required to avoid using or possessing alcohol or any controlled
3  substances, submit to drug and alcohol testing, obtain an alcohol/substance abuse evaluation and
4  follow any treatment recommendations, and undergo a mental health evaluation and follow all
5  treatment recommendations. (*Id.*)

6  On July 12, 2013, Petitioner pled guilty to Conspiracy to Distribute Cocaine. (Resp., Ex.
7  E.) He was allowed to remain free while awaiting his sentencing hearing, which was scheduled
8  for October 10, 2013. (Pet. at ¶ 16; *see also* Resp., Ex. E.) At the sentencing hearing and as a part
9  of the stipulated terms of the plea agreement, the government recommended the 60-month
10 mandatory minimum followed by four years of supervised release. (Reply, Ex. 1 at 42.) The
11 Honorable Robert S. Lasnik adopted this recommendation, explaining:

> When I first picked up the file, I was seriously considering not going along with the plea agreement, and giving 70 months, and not allowing self-report, to put you into custody immediately today. Because, frankly, I don't see a lot of people who come back through the system at your young age of 32, you are going to be 33 on Sunday, who have had two trips through U.S. District Court, even spaced as far apart as yours are, both for serious drug offenses. We don't do chippy drug offenses in federal court.
>
> My thinking is, this is somebody who has had a chance already, did not take advantage of the five years of supervised release, did not take advantage of the opportunities that were presented to him, and was involved in a very serious drug trafficking organization. I was going to quiz [the prosecuting attorney] about why she was giving away the farm here.
>
> But I am very impressed with what you've done when Judge Theiler gave you this rare opportunity to prove that you could control yourself, you could be mature, you could avoid the pitfalls. One could look at that, her letting you out on bond, as setting you up for failure. . . . . Had you messed up in that timeframe you would be going away for longer than five years.
>
> So with that really strong effort to show post-offense presentencing rehabilitation, and the release status report from Probation/Pretrial that says you have been clean, you have been doing everything that you were supposed to do, and with the maturity that you have expressed here today, I will follow the joint recommendation.

(*Id.* at 48-49.) Judge Lasnik also noted that the government had opposed Petitioner's request for release pending trial, and that he "probably would have kept you in. I wouldn't have done what Judge Theiler did. She gave you a wonderful opportunity, but it was also a challenge, and you took advantage of it. That means a lot." (*Id.* at 51.) Judge Lasnik thus allowed Petitioner to self-report to prison, which he did on November 11, 2013. (Pet. at ¶¶ 17-19.)

While in prison, Petitioner obtained his G.E.D., took additional classes, and attended Bible studies. (*Id.* at ¶ 21.) Even though drugs were readily available, he remained sober, participated in the Residential Drug Abuse Program, and sought out counseling to control his drug addiction. (*Id.*)

### B.    Petitioner's Removal Proceedings

In January 2018, prior to Petitioner's release from prison, an IJ granted DHS's motion to reopen his removal proceedings to terminate the withholding of removal. (Resp., Ex. F (Dkt. # 5-1 at 26-27).) In March 2019, an IJ denied Petitioner's application for protection under the Convention Against Torture. (Pet. at ¶ 22.) In August 2019, the Board of Immigration Appeals ("BIA") dismissed his appeal. (*Id.*) Petitioner filed a petition for review with the Ninth Circuit. *Martinez v. Barr*, No. 19-72433 (9th Cir.). On October 2, 2020, the Ninth Circuit granted the government's unopposed motion to remand the matter to the BIA. (*Id.*, Dkt. # 32.)

### C.    Petitioner's Current Detention

On April 28, 2018, Petitioner completed his prison sentence, and ICE took him into custody. (Resp., Ex. B.) On November 19, 2018, Petitioner filed a habeas petition in this Court requesting release or a bond hearing. *Martinez v. Clark*, No. 18-1669-RAJ-MAT, Dkt. # 1 (W.D. Wash.). On November 13, 2019, the Honorable Richard A. Jones adopted Judge Theiler's recommendation that Petitioner's request for release be denied but that he be afforded a bond

hearing that complied with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *See id.*, Dkt. ## 17 (R. & R.), 20 (Order Adopting R. & R.).

On November 26, 2019, Petitioner appeared for a bond hearing before an IJ. (*See* Resp., Ex. G (Dkt. # 5-1 at 28-35).) Petitioner, who was represented by counsel, submitted an evidence packet that included: numerous letters of support from family and community members, evidence that he had submitted a U-visa application to U.S. Citizenship and Immigration Services, the appearance bond issued by Judge Theiler, the transcript of his sentencing hearing with Judge Lasnik, and proof that he had completed substance abuse treatment while in prison, obtained his G.E.D., and participated in additional educational and vocational classes. (*See* Reply, Ex. 1.) DHS's evidence packet included Petitioner's immigration file and records from his criminal convictions. (*See* Resp., Ex. G at 3.) At the end of the hearing, the IJ denied bond, finding that DHS had met its burden of establishing by clear and convincing evidence that Petitioner is both a danger to the community and a flight risk. (*See id.* at 1.) The IJ also found that conditional parole was not appropriate in this case. (*Id.* at 6.)

The IJ's written bond memorandum summarized the status of Petitioner's removal proceedings, discussed Judge Jones's order requiring the bond hearing to comply with *Singh*, and set forth the relevant factors for the court to consider under *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006). (*See* Resp., Ex. G at 1-3.) The IJ discussed Petitioner's evidence, including his successful release pending his most recent criminal trial, Judge Lasnik's praise during the sentencing hearing, the fact that he self-reported to prison, his good behavior while in prison, his G.E.D., his successful completion of other rehabilitative and vocational classes, and his close family ties and strong community support. (*Id.* at 4.) The IJ thus concluded that Petitioner had "significant equities in the United States." (*Id.*) Nevertheless, the IJ found that Petitioner presents

a danger to the community due to his two drug-trafficking convictions and that this danger was not "sufficiently mitigated by his good behavior while he was awaiting sentence and while he was in federal prison." (*Id.* at 5.) The IJ also found that Petitioner presents a flight risk because his forms of relief from removal are extremely limited, which was not the case when the federal judges released him pending trial and sentencing. (*Id.* at 5-6.)

Petitioner appealed to the BIA. (Resp., Ex. H (Dkt. # 5-1 at 36-38).) The BIA agreed with the IJ that DHS had proved by clear and convincing evidence that Petitioner presents a danger to the community. (*Id.* at 1.) The BIA noted that it has "long acknowledged the dangers associated with the sale and distribution of drugs" and that Petitioner's "repeated drug trafficking offenses provide strong evidence that [he] is a danger to the community." (*Id.*) The BIA considered Petitioner's efforts to rehabilitate himself and the fact that seven years had elapsed since his last conviction but concluded that these were "insufficient to overcome the strong evidence of dangerousness," reasoning that the fact Petitioner has been well-behaved while in custody the past seven years "does not indicate that he will not revert to his old habits of drug use and trafficking upon his release, particularly given [his] claim that he maintained his sobriety for some period of time following his first conviction but ultimately started using and selling cocaine once again." (*Id.* at 2; *see also id.* ("Having considered the totality of the evidence in this case, we agree with the Immigration Judge that despite the respondent's rehabilitation efforts, the serious nature of his convictions and his history of reoffending, even after several years of claimed sobriety, renders the respondent a danger to the community.").) The BIA also rejected Petitioner's argument that it was collaterally estopped from reaching this conclusion because the federal judges released him pending trial and allowed him to self-report to prison. (*Id.*) Because

the BIA found Petitioner to be a danger to the community, it did not discuss the IJ's flight risk finding. (*Id.*)

### III.   DISCUSSION

Petitioner argues that he is entitled to immediate release because the BIA failed to comply with Judge Jones's order that he receive a *Singh* bond hearing and because his continued detention violates due process. Specifically, he contends that the BIA erred by: (1) failing to apply collateral estoppel to the federal judges' determination that he does not present a danger or flight risk, (2) failing to consider releasing him on conditional parole, and (3) concluding that the Government presented clear and convincing evidence of dangerousness. In addition to responding to these arguments, the Government contends the Court does not have jurisdiction. As discussed below, the Court finds that the bond hearing complied with *Singh* and that Petitioner's continued detention does not violate his due process rights.

**A.   Jurisdiction**

The Government argues that the Court does not have jurisdiction to review the denial of bond because the immigration courts' exercise of discretion is not subject to judicial review under 8 U.S.C. § 1226(e). Section 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the grant, revocation, or denial of bond or parole.

"Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law," including the "application of law to undisputed facts, sometimes referred to as mixed questions of law and fact." *Singh*, 638 F.3d at 1202 (quoted sources omitted); *see also Hernandez v. Sessions*, 872

F.3d 976, 987 (9th Cir. 2017) (claims that the bond process was itself flawed are cognizable in federal court).

The Court concludes that § 1226(e) does not bar consideration of Petitioner's claims. "The availability of collateral estoppel presents a mixed question of law and fact[.]" *Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988). Petitioner's argument that the BIA was required to consider release on conditional parole presents a question of law and does not challenge any discretionary determination. Finally, Petitioner presents a colorable due process argument that DHS failed to meet its evidentiary burden, and therefore, the bond determination was constitutionally flawed. *See, e.g.*, *Hernandez*, 872 F.3d at 988; *Perez v. Wolf*, 445 F.Supp.3d 275, 284 (N.D. Cal. 2020) (finding jurisdiction over claim that the government failed to meet its evidentiary burden in immigration bond hearing); *Ramos v. Sessions*, 293 F.Supp.3d 1021, 1028 (N.D. Cal. 2018) (same); *cf. United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (release determinations under the Bail Reform Act present mixed questions of law and fact).

**B.     Collateral Estoppel and Conditional Parole**

Petitioner argues that the BIA erred by failing to apply collateral estoppel to the federal judges' determination that he did not present a flight risk or danger to the community after his arrest in 2013 and subsequent conviction. He also argues that the BIA erred by failing to consider releasing him on conditions of supervision. The Court is not persuaded by either argument.

Collateral estoppel applies to a question, issue, or fact when: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012). As an

initial matter, the Court has been unable to identify any case applying collateral estoppel to a prior bail determination.[1] Perhaps this is because bail decisions are not necessary to decide the merits of criminal proceedings, an essential element of collateral estoppel. Regardless, as discussed below, the Court concludes that the issues presented to the federal and immigration judges were not identical.

"[D]etention of a criminal defendant pending trial pursuant to the [Bail Reform Act] and detention of a removable [noncitizen] pursuant to the [Immigration and Nationality Act] are separate functions that serve separate purposes and are performed by different authorities." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) (quotation marks omitted, first and third alterations in *Diaz-Hernandez*). The Bail Reform Act requires a defendant to be released, subject to appropriate conditions, unless the government presents clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Hir*, 517 F.3d at 1086 (quoting 18 U.S.C. § 3142(e)); *see also United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) ("Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant.").

In considering the due process protections required for prolonged-detention bond hearings, the Ninth Circuit in *Singh* did not adopt the Bail Reform Act's standards. Instead of requiring the government to present clear and convincing evidence that no conditions of release

---

[1] The cases Petitioner cites are distinguishable. *See, e.g.*, *Oyeniran*, 672 F.3d at 806 (applying collateral estoppel to preclude the BIA from "rehashing the historical facts and its findings of law" in previous removal proceedings); *Matter of Fedorenko*, 19 I. & N. Dec. 57, 65-67 (BIA 1984) (allowing BIA to rely on findings of fact and conclusions of law made by a federal court in denaturalization proceedings); *Matter of Rina*, 151 I. & N. Dec. 346, 346-47 (BIA 1975) (precluding noncitizen from relitigating the issue of illegal entry in his deportation proceedings because he was convicted of illegal entry in federal criminal proceedings).

would mitigate any dangerousness or flight risk, the Ninth Circuit held only "that the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond . . . ." *Singh*, 638 F.3d at 1203. The Ninth Circuit went on to discuss the standard of dangerousness that must be met to deny bond, directing the immigration courts to consider the factors set forth in *Guerra*, which include consideration of the noncitizen's "criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Id.* at 1206 (quoting *Guerra*, 24 I. & N. Dec. at 40). The Ninth Circuit also considered and rejected the petitioner's argument that the government should be required to show "special dangerousness" to deny bond. *Id.* at 1206-07. Throughout its discussion, the Ninth Circuit did not suggest that the immigration courts were required to consider conditions of release in assessing whether the government met its burden. More importantly the issue at stake in the criminal bail hearing and the immigration bond hearing were not identical. As pointed out by the IJ in her order, the circumstances changed between the time of Mr. Martinez's bail hearing and the hearing before her: "At this stage in Respondents' removal process, his forms of relief from removal are very limited." (Ex. G at 5.) Given the differences between the Bail Reform Act and *Singh*'s due process requirements and the difference circumstances between the two bond hearings, the Court concludes that collateral estoppel did not require the BIA to follow the federal judges by releasing Petitioner. In sum, the Court recommends denying Petitioner's collateral estoppel and conditional parole claims.

  **C.**  **Clear and Convincing Evidence**

  Petitioner argues that the BIA erred as a matter of law in concluding that DHS presented clear and convincing evidence of dangerousness, and therefore, his continued detention violates due process. (*See* Pet. at ¶¶ 29, 31-32.) As discussed below, the Court does not agree.

### 1. Legal Standard

"The clear and convincing evidence standard is a high burden and must be demonstrated in fact." *Calderon-Rodriguez*, 374 F.Supp.3d at 1033 (quoting *Ramos*, 293 F.Supp.3d at 1030 (quotation and citation omitted)). To make this assessment, the IJ may consider any number of discretionary factors, including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *Guerra*, 20 I. & N. Dec. at 40; *see also Singh*, 638 F.3d at 1206.

In addition, "[a]lthough [a noncitizen's] criminal record is surely relevant to a bond assessment, . . . criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses must be considered." *Singh*, 638 F.3d at 1206. "[B]ecause the IJ must consider 'the recency and severity of [any past] offenses,' evidence of criminal conduct grows less powerful as it becomes less current. Thus, the passage of time is undeniably relevant and the IJ must consider it." *Ramos*, 293 F.Supp.3d at 1034) (internal citation to *Singh* omitted); *Singh*, 638 F.3d at 1206 ("[A] conviction could have occurred years ago, and the [noncitizen] could well have led an entirely law-abiding life since then."). This does not mean, however, "that criminal conviction evidence inevitably loses its persuasive force" or that the government must present new evidence of dangerousness at each

bond hearing. *Id.* at 1033-34. "The IJ also must consider whether the detainee's circumstances have changed such that criminal conduct is now less likely." *Calderon-Rodriguez*, 374 F.Supp.3d at 1033 (citing *Singh*, 638 F.3d at 1205 ("[T]he BIA focused on Singh's prior convictions for petty theft, receiving stolen property and substance abuse. Under a clear and convincing evidence standard, the BIA might conclude that Singh's largely nonviolent prior bad acts do not demonstrate a propensity for future dangerousness, in view of evidence showing that his drug use, which was the impetus for his previous offenses, has ceased.")).

### 2. Standard of Review

The Ninth Circuit has not provided "clear guidance on precisely what standard of review a district court should apply in reviewing an IJ's application of the clear and convincing evidence standard of proof." *Ramos*, 293 F.Supp.3d at 1030 (citing *Singh*). This Court agrees with others that "a standard of review which asks only whether the IJ announced the correct legal standard is insufficient." *Ramos*, 293 F.Supp.3d at 1030 (citing *Nat'l Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision."); *Cole v. Holder*, 659 F.3d 762, 771-72 (9th Cir. 2011) ("[W]here there is any indication that the BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand. Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence.")); *see also Calderon-Rodriguez*, 374 F.Supp.3d at 1035 (reaching same conclusion).

In *Ramos*, the court took "its cue from the standard of review an appellate court applies when reviewing a lower court's application of the clear and convincing evidence standard." *Ramos*, 293 F.Supp.3d at 1030-31. Thus, the court reviewed the IJ's factual findings for clear

error and independently reviewed "the facts, findings, and record to determine, de novo, whether those facts clearly and convincingly demonstrate that [the petitioner] poses such a danger to the community that she must remain detained, including because no alternative to detention could protect the community." *Id.* at 1032-33; *see also Calderon-Rodriguez*, 374 F.Supp.3d at 1035. As discussed above, *Ramos*'s consideration of alternatives to detention goes beyond the requirements of *Singh*. Otherwise, however, the Court concurs that factual findings should be reviewed for clear error, which gives some deference to the immigration courts, but that the ultimate determination of whether those facts amount to clear and convincing evidence of flight risk and dangerousness should be reviewed de novo.

### 3. Sufficiency of Petitioner's Bond Hearing

Petitioner argues that the BIA erred as a matter of law when it affirmed the IJ's determination that he presents a current danger to the community. (Pet. at ¶ 31.) In support of this claim, he cites his successful release in 2013, his continued sobriety and participation in counseling when available, his completion of drug abuse and other educational programs, his G.E.D., and the fact that he has not committed any offense in over seven years. (*Id.*; *see also* Reply at 10-14.) While the Court finds Petitioner's rehabilitation efforts commendable, it concludes on de novo review that DHS presented clear and convincing evidence of current dangerousness. Petitioner was convicted of two serious drug trafficking offenses before his 33rd birthday, and although he maintained his sobriety for several years after his first conviction, he ultimately relapsed and began selling drugs again. Petitioner cites several cases where the courts found that the evidence did not meet the clear and convincing standard, but all of these cases involved more remote and/or less serious criminal activity. *See, e.g.*, *Judulang v. Chertoff*, 562 F.Supp.2d 1119, 1127 (S.D. Cal. 2008) (evidence of 20-year-old manslaughter conviction,

seven-year-old DUI conviction, and five-year-old burglary conviction was not sufficient, as a matter of law, to establish dangerousness); *Mau v. Chertoff*, 562 F.Supp.2d 1107, 1119 (S.D. Cal. 2008) (government did not establish dangerousness, as a matter of law, by pointing only to past DUI convictions that were four to six years old); *see also Ramos*, 293 F.Supp.3d at 1035 (two misdemeanor DUIs where sentencing judges declined to impose any custodial time were insufficient to satisfy clear and convincing evidence standard); *Calderon-Rodriguez*, 374 F.Supp.3d at 1036 (government did not meet clear and convincing evidence standard when the petitioner's two misdemeanor DUIs were over seven years old, and his one felony DUI/vehicular assault conviction, which did not result in any jail time, was over four years old). When compared with these cases, it is apparent that the severity and recency of Petitioner's criminal history satisfies the clear and convincing evidence standard, even when accounting for Petitioner's rehabilitation efforts.

Petitioner also argues that the BIA improperly placed the burden of proof on him to show that he will not reoffend. (Reply at 11-12.) A review of the BIA's decision as a whole, however, does not support this claim. The BIA found that DHS satisfied its burden of providing clear and convincing evidence of dangerousness based on Petitioner's 2000 and 2013 drug trafficking convictions: "The respondent's repeated drug trafficking offenses provide strong evidence that the respondent is a danger to the community." (Resp., Ex. H at 1.) The BIA then went on to discuss the evidence Petitioner had submitted in support of his request for bond, concluding that the fact Petitioner "has been well-behaved during the approximately 7 years he has been detained in either prison or DHS custody does not indicate that he will not revert to his old habits of drug use and trafficking upon his release, particularly given the respondent's claim that he maintained his sobriety for some period of time following his first conviction but ultimately started using

1  and selling cocaine once again." (*Id.* at 2.) The BIA also cited *Singh*'s requirement that it
2  consider the seriousness of the offenses, their recency, and any evidence of rehabilitation. (*Id.*) It
3  concluded: "Having considered the totality of the evidence in this case, we agree with the
4  Immigration Judge that despite the respondent's rehabilitation efforts, the serious nature of his
5  convictions and his history of reoffending, even after several years of claimed sobriety, renders
6  the respondent a danger to the community." (*Id.*) Thus the BIA did not improperly place the
7  burden on Petitioner and instead held the government to its burden of proof.

8        Finally, Petitioner cites *Obregon v. Sessions*, No. 17-1463, 2017 WL 1407889 (N.D. Cal.
9  April 20, 2017), which noted that the Executive Office for Immigration Review does not have
10 guidelines to direct IJs in applying the *Guerra* factors and concluded that IJs could look for
11 guidance from cases applying the clear and convincing evidence standard under the Bail Reform
12 Act and from the bail decision in the underlying criminal matter. *Id.* at *6. The court ultimately
13 ordered a new bond hearing for the petitioner, who had three DUIs and four convictions for
14 driving with a suspended license. *Id.* at *8. In doing so, the court expressed skepticism that the
15 government would be able to meet its burden and indicated it was "extremely doubtful that any
16 Magistrate Judge on this court would have remanded her to custody based on this record." *Id.*

17       The Court does not disagree that the immigration courts may look to criminal cases for
18 guidance, but as discussed above, there are material differences between the Bail Reform Act
19 and *Singh*. Furthermore, Petitioner's case is readily distinguishable from *Obregon* because
20 Petitioner's criminal history is much more significant than in *Obregon*, and it is not "extremely
21 doubtful" that no judge would have detained him pending trial. (*See* Reply, Ex. 1 at 48, 51
22 (Judge Lasnik's statements during the sentencing hearing that Judge Theiler had given Petitioner
23 a "rare opportunity" and that he "probably would have kept you in").)

For these reasons, the Court recommends denying Petitioner's challenge to the BIA's conclusion that clear and convincing evidence supports his continued detention.

### IV.    CONCLUSION

The Court recommends that Petitioner's habeas petition be DENIED and that this action be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **11/20/2020.**

Dated this 6th day of November, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge